IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MIDWEST FOSTER CARE AND ADOPTION ASSOCIATION, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 11-CV-01152-DW ) |
| BRIAN KINKADE and CANDACE SHIVELY, | ) ) ) |
| Defendants. | ) |

## ORDER

Pending before the Court is the Defendants' Motion to Dismiss (the "Motion"). See Doc. 6. The Defendants filed suggestions in support of the Motion (Doc. 7), the Plaintiffs filed suggestions in opposition (Doc. 9), and the Defendants filed a reply brief (Doc. 10). As explained below, the Court concludes that §§ 672(a)(1) and 675(4)(A) of the Child Welfare Act (the "CWA") do not create an unambiguous right that is enforceable under 42 U.S.C. § 1983. Consequently, the Motion is GRANTED because the Complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

### I.

The Plaintiff Midwest Foster Care and Adoption Association is a not-for-profit corporation. "It is dedicated to the support and advocacy of abused and neglected children in the State of Missouri and the families that care for them." Complaint at ¶ 16. The Plaintiff Missouri State Foster Care and Adoption Board is an independent board that consists of foster care and adoptive parents. Id. at ¶ 17. The remaining Plaintiffs are individuals who are licensed foster care parents. Id. at ¶¶ 19-22.

The Defendant Brian Kinkade is the Director of the Missouri Department of Social Services (the "DSS"). He allegedly "has overall responsibility for the administration of the Child Welfare Act

and its programs in Missouri." Id. at ¶ 23. The Defendant Candace Shively is the Director of the DSS's Children's Division. She allegedly "has responsibility for overseeing the foster care program for the State of Missouri." Id. at ¶ 24.

The Complaint alleges that the Defendants are not making adequate "foster care maintenance payments" as required by the CWA. See 42 U.S.C. §§ 672(a)(1); 675(4)(A). The Plaintiffs believe that they have a right to such payments, and that the right is enforceable under 42 U.S.C. § 1983. In part, the Plaintiffs seek a declaration that the Defendants are violating the CWA by "failing to establish rates adequate to meet the costs incurred by foster parents . . . ." The Plaintiffs also seek injunctive relief that would require the Defendants to: (a) make foster care maintenance payments that comply with the CWA; (b) adopt a methodology for determining adequate payments; and (c) implement payments pursuant to that methodology. The Plaintiffs also seek an award of attorneys' fees and costs.

The Defendants responded by filing the pending Motion. Their primary argument is that the CWA does not create a private right to adequate payments that is enforceable under § 1983. This issue is addressed below.

## II.

Congress enacted the CWA under its Spending Clause power. California Alliance of Child & Family Servs. v. Allenby, 459 F. Supp. 2d 919, 921 (N.D. Cal. 2006). It is "a joint federal-state program that provides federal monies to participating states for certain costs of administering the foster care system." Id. To receive federal funds, a state must submit a plan for financial assistance to the Secretary of the Department of Health and Human Services (the "Secretary"). 42 U.S.C. § 671(a). A state's proposed plan must include a number of "requisite features," including an

agreement to fully comply with the CWA and its implementing regulations. See 42 U.S.C. § 671(a)(1)-(33).

Two CWA provisions are primarily at issue in this case. The first provision, 42 U.S.C. § 672(a)(1), provides that "**Each State** with a plan approved under this part **shall make foster care maintenance payments on behalf of each child** who has been removed from the home of a relative . . . ." 42 U.S.C. § 672(a)(1) (emphasis supplied). The second provision, 42 U.S.C. § 675(4)(A), defines "foster care maintenance payments" as "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement." 42 U.S.C. § 675(4)(A). The dispositive issue is whether these two provisions create a right to foster care maintenance payments that is enforceable through § 1983.

## III.

Section 1983 imposes liability on any person who, under color of state law, deprives an individual "of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. The violation of a federal statute does not necessarily trigger a § 1983 claim. Frison v. Zebro, 339 F.3d 994, 998 (8th Cir. 2003). "This is because . . . a plaintiff must assert the violation of a federal **right**, not merely a violation of federal **law**." Id. (citations and quotations omitted) (emphasis in original). The key is whether Congress intended to confer such a right, and the Supreme Court has set forth standards to glean that intent.

In Blessing v. Freestone, 520 U.S. 329 (1997), the Supreme Court recognized that three factors "traditionally" determine if a statutory provision creates a federal right: "(1) Congress

3

intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states." Lankford v. Sherman, 451 F.3d 496, 508 (8th Cir. 2006) (citing and quoting Blessing, 520 U.S. at 340-41).  The Court then applied those factors to a provision of the Social Security Act which required a state receiving child welfare funds to "operate its child support program in 'substantial compliance'" with that provision.  Blessing, 520 U.S. at 343.  The Court found that this provision was not intended to benefit individual children and custodial parents:  "[f]ar from creating an **individual** entitlement to services, the standard is simply a yardstick for the Secretary to measure the **systemwide** performance of a State's . . . program." Id. (emphasis in original).

Five years later, in Gonzaga University v. Doe, 536 U.S. 273 (2002), the Court "tightened up the Blessing requirements." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 73 (1st Cir. 2005). In Gonzaga, the plaintiff brought suit under § 1983 to enforce provisions of the Family Educational Rights and Privacy Act ("FERPA").  FERPA provided in part that "[n]o funds shall be made available . . . to any educational agency or institution which has a policy or practice of permitting the release of education records . . . of students without the written consent of their parents to any individual, agency, or organization." Id. at 279 (quoting 20 U.S.C. § 1232g(b)(1)). Gonzaga held that this provision did not create a private right that could be enforced under § 1983.

In its decision, "the Supreme Court clarified the first prong [under Blessing], holding that **'anything short of an unambiguously conferred right' does not support an individual right of action** under section 1983." Lankford, 451 F.3d at 508 (quoting Gonzaga, 536 U.S. at 283) (emphasis supplied)).  Gonzaga further stressed that for spending power legislation, "the typical

4

remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." Gonzaga, 536 U.S. at 280 (citations and quotations omitted).

Gonzaga then examined the provisions at issue and the overall structure of the statute. As explained by the Court, "[u]nlike the individually focused terminology of Titles VI and IX ("No person . . . shall . . . be subjected to discrimination"), FERPA's provisions speak only to the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.'" Id. at 287. The Court also found that FERPA's nondisclosure provisions had an "aggregate focus," in that they "speak only in terms of institutional policy and practice, not individual instances of disclosure." Id. at 288. Finally, Gonzaga concluded that FERPA's administrative enforcement provisions further undermined any Congressional intent to create an individual right. Id. at 289-90.

## IV.

It is against this backdrop that the Court must decide whether §§ 672(a)(1) and 675(4)(A) of the CWA create a right to foster care maintenance payments that is enforceable under § 1983. The majority view is that there is such a right. California State Foster Parent Ass'n v. Wagner, 624 F.3d 974, 982 (9th Cir. 2010); C.H. v. Payne, 683 F. Supp. 2d 865, 877-88 (S.D. Ind. 2010) (collecting cases and agreeing with majority view). A minority of courts have held to the contrary. Stricklin v. Henry, 594 F. Supp. 2d 1273, 1280 (N.D. Okla. 2009); Carson P. v. Heineman, 240 F.R.D. 456, 540-41 (D. Neb. 2007). For the reasons set forth below, this Court joins Stricklin and Heineman.

### A.

The first prong under Blessing (as tightened by Gonzaga) examines whether the provision

5

at issue establishes an "unambiguously conferred right." Gonzaga, 536 U.S. at 283.  Here, § 672(a)(1) provides that "**Each State with a plan approved** under this part **shall make foster care maintenance payments on behalf of each child** . . . ." 42 U.S.C. § 672(a)(1) (emphasis supplied). Section 675(4)(A) then defines what those payments will cover, including "daily supervision, school supplies, and a child's personal incidentals . . . ." 42 U.S.C. § 675(4)(A).

The problem for Plaintiffs is that these provisions lack the requisite "rights-creating" and "individually focused" language required by Gonzaga. Gonzaga, 536 U.S. at 287.  In contrast to the "individually focused" language in statutes such as Title IX– "**No person** . . . **shall**, on the basis of sex . . . **be subjected to discrimination** under any education program or activity receiving Federal financial assistance"–§ 672(a)(1) is directed at what the state must do. Gonzaga, 536 U.S. at 284, 287 (quoting 20 U.S.C. § 1681(a)). Consequently, although a foster child may ultimately benefit, § 672(a)(1) more closely resembles an affirmative obligation on the state than the creation of an individual right. See Alexander v. Sandoval, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights . . . .") (citations and quotations omitted).

Hughlett v. Romer-Sensky, 497 F.3d 557 (6th Cir. 2006) supports this conclusion.  In Hughlett, the court analyzed a provision of the Social Security Act requiring that "**an amount collected on behalf of a family** as support by a State **pursuant to a plan approved** under this part **shall be distributed as follows** . . . ." Id. at 563 (quoting 42 U.S.C. § 657(a)) (emphasis supplied). The Sixth Circuit concluded that this language "is directed toward the administering body." Id. Therefore, it "is intended to provide instruction to the States and does not contain the rights-creating language necessary to create an enforceable individual right." Id. (citing and discussing Walters v.

6

Weiss, 392 F.3d 306 (8th Cir. 2004)). The language in § 672(a)(1) is similar and requires the same conclusion. Stricklin, 594 F. Supp. 2d at 1280 (holding that the CWA does not suggest "a clear Congressional intent to confer a private right of action on foster children").[1]

**B.**

Gonzaga also advised that the overall "structure" of the statute should be examined. See Gonzaga, 536 U.S. at 286. Here, the structure of the CWA undercuts any finding of an individual right. Section 670 sets forth Congress's "declaration of purpose." The declaration provides that the CWA was enacted to appropriate funds "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care and transitional independent living programs for [eligible] children . . . ." 42 U.S.C. § 670. The declaration does not speak in terms of individual rights. Instead, it evinces an intent to set forth the terms of a financial agreement between Congress and particular states.

Other provisions support this interpretation. As discussed above, a state must develop and then submit a plan for financial assistance to the Secretary. See 42 U.S.C. § 671(a)(1)-(33). This plan must contain a number of "requisite features," including "periodic review of the . . . amounts paid as foster care maintenance payments . . . to assure their continuing appropriateness." 42 U.S.C. § 671(a)(11). For these reasons, the overall text and structure of the CWA show that it is focused

---

[1] In support of an individual right, the Plaintiffs emphasize the "on behalf of each child" language. See 42 U.S.C. § 672(a)(1); California State Foster Parent Ass'n, 624 F.3d at 980 (stating that "§ 672 of the CWA focuses squarely on the individuals protected [and] Section 672(a) is about payments 'on behalf of each child'"). But this too narrowly construes § 672. As explained above, payments under § 672(a) are first conditioned on the approval of the state plan and that section then imposes additional conditions on payments. This unmistakable focus on the state cannot be ignored simply because a foster child may ultimately benefit from state compliance. Gonzaga, 536 U.S. at 283 (recognizing that "it is **rights**, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under" § 1983) (emphasis in original).

7

on the "aggregate" and not on "whether the needs of any particular person have been satisfied." Gonzaga, 536 U.S. at 288; Stricklin, 594 F. Supp. 2d at 1278, 1280.

## C.

Finally, Gonzaga found it important that FERPA included administrative procedures to ensure compliance. Gonzaga, 536 U.S. at 289-90. The CWA also contains remedial procedures, even if they are not as robust as FERPA's. As stated above, the state is required to review whether the amounts of foster care maintenance payments are appropriate. 42 U.S.C. § 671(a)(11). More importantly, federal funds may be withheld if a state is not compliant with the CWA. 42 U.S.C. § 1320a-2a(b)(3). These provisions help show that Congress did not intend for a private right, but instead "action by the federal government to terminate federal matching funds." Lankford, 451 F.3d at 508.

## D.

In Missouri Child Care Ass'n v. Martin, 241 F. Supp. 2d 1032 (W.D. Mo. 2003), a judge in this District reached a contrary conclusion; that case held that there is a private right under §§ 672 and 675 of the CWA. For the reasons set forth above, the undersigned joins the District of Nebraska and respectfully disagrees with that holding. Heineman, 240 F.R.D. at 540-41 (expressly disagreeing with Martin); see also Southeastern Stud & Components, Inc. v. American Eagle Design Build Studios, LLC, 588 F.3d 963, 967 (8th Cir. 2009) (recognizing that "one district court is not bound by the holdings of others, even those within the same district").

In addition, Martin heavily relied on Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990). Martin, 241 F. Supp. 2d at 1038-1042. In Wilder, the Supreme Court found that hospitals had a right to be paid under the Medicaid Act and could enforce that right through § 1983. Martin compared

8

the language of the Medicaid Act to the CWA, and found "that there is no fair basis for distinguishing Wilder." Id. at 1040. According to Martin, "[t]he CWA, like the Medicaid statute in Wilder, explicitly confers monetary entitlements on the foster care institutional providers and evidences Congress' intent to permit those foster care institutions to enforce their rights in federal court using § 1983." Id. at 1041.

Importantly, Martin believed that the Wilder analysis remained sound because Gonzaga did not levy any "criticisms or clarification" at it. Martin, 241 F. Supp. 2d at 1041. This Court, however, believes the emphasis should be on Gonzaga and not on Wilder.[2] Gonzaga "plainly rejected the broader 'benefit' test–which the Court expressly identified as having been employed in Wilder (and Blessing)–in favor of the narrower 'unambiguously conferred right' analysis that now governs." Minnesota Pharmacists Ass'n v. Pawlenty, 690 F. Supp. 2d 809, 818 n.5 (D. Minn. 2010) (addressing Martin and concluding that "it is clear that [Gonzaga] rejected some implications of Wilder").[3] Put simply, the guideposts laid down in Gonzaga require dismissal of this case.[4]

Heineman also disagreed with Martin on the second prong of the Blessing test–that is,

---

[2] See, e.g., Mandy R. v. Owens, 464 F.3d 1139, 1148 (10th Cir. 2006) ("Even though Wilder addressed a similar statute, our approach is controlled by Gonzaga, the Supreme Court's most recent assessment of private rights of action."); Sanchez v. Johnson, 416 F.3d 1051, 1056 n.3 (9th Cir. 2005) ("Justice Stevens, writing in dissent in Gonzaga, even suggested that the reasoning in Wilder is so out of step with the Court's holding in Gonzaga that it has been effectively overruled.").

[3] After Martin, the Eighth Circuit has acknowledged Gonzaga's narrower approach; it stated that "[w]hile the Supreme Court has rarely found enforceable rights in spending clause legislation, it has not foreclosed the possibility that individual plaintiffs may sue to enforce compliance with such legislation." Lankford, 451 F.3d at 508. The Eighth Circuit cited Wilder for this latter proposition, but in the next sentence recognized that "[s]till, **the Court has since limited the circumstances where a private right of action is found** under section 1983." Id. (citing Gonzaga, 536 U.S. at 290, Blessing, 520 U.S. at 344-45, and Suter v. Artist M., 503 U.S. 347, 363 (1992) (emphasis supplied)).

[4] The Supreme Court handed down Gonzaga after the parties in Martin had submitted their briefs. Martin, 241 F. Supp. 2d at 1039. Therefore, courts had not fully examined the implications of Gonzaga when Martin was decided.

9

whether the asserted right "is not so vague and amorphous that its enforcement would strain judicial competence." Blessing, 520 U.S. at 340-41. Heineman found that "the statutes and regulations under consideration in Wilder included specific factors to be considered in determining the methods for calculating rates." Heineman, 240 F.R.D. at 540 (quoting Wilder, 496 U.S. at 520 n.17). In contrast, Heineman concluded that § 672 and § 675(4)(A) lack sufficient guidance to determine "how rates should be set for paying foster care providers." Id. This Court agrees, and finds that the alleged right to payment for items such as a child's "personal incidentals" and "reasonable travel," 42 U.S.C. § 675(4)(A), is "so vague and amorphous that its enforcement would strain judicial competence." Blessing, 520 U.S. at 340-41.

## V.

For all these reasons, the Court holds that §§ 672(a)(1) and 675(4)(A) of the CWA do not create an enforceable right under § 1983 to foster care maintenance payments. Consequently, it is hereby

ORDERED that the Defendants' Motion to Dismiss (Doc. 6) is GRANTED; it is further ORDERED that the Plaintiffs' claims are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to terminate any pending motions, and to then mark this case as closed.

IT IS SO ORDERED.


Date:   March 9, 2012                                        /s/ Dean Whipple
                                                                                             Dean Whipple
                                                                        United States District Judge